APPEAL CASE NO. 25-6000

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

---

(1) MAX LANCASTER, by and through Jan Green, next of friend and attorney-in-fact; and (2) PEGGY LANCASTER, by and through Jan Green, next of friend and attorney-in-fact;
Plaintiffs / Appellants

vs.

(3) JEFFREY CARTMELL, Director of the Oklahoma Department of Human Services, in his official capacity; and (4) ELLEN BUETTNER, CEO/Director of the Oklahoma Health Care Authority;
Defendants / Appellees

---

On Appeal from the United States District Court
For the Western District of Oklahoma
The Honorable
United States District Judge Bernard M. Jones
CIV-24-842-J

---

### APPELLANTS' RESPONSE TO APPELLEES' JOINT MOTION FOR SUMMARY DISPOSITION AND BRIEF IN SUPPORT

---

Michael Craig Riffel, OBA #16373
Katresa J. Riffel, OBA #14645
Matthew C. Russell, OBA #30239
Riffel, Riffel & Benham, P.L.L.C.
3517 W. Owen K. Garriott, Suite One
Enid, Oklahoma 73703
Telephone: (580) 234-8447
Facsimile: (580) 234-5547
Email: criffel@westoklaw.com

September 25, 2025
Attorneys for Appellants

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... ii

INTRODUCTION .................................................................................1

ARGUMENTS AND AUTHORITIES ................................................1

    PROPOSITION 1:  NO SUPERVENING CHANGE OR LAW OR
    MOOTNESS.....................................................................................1

    PROPOSITION 2:  STATUTE IN THE PRESENT CASE IS VERY
    DIFFERENT FROM THE STATUTE IN MEDINA ....................................4

    PROPOSITION 3:  UNDER GONZAGA 42 U.S.C. §1396a(a)(8)
    CREATES A PRIVATE RIGHT OF ACTION .............................................8

        STEP 1 – GONZAGA REQUIREMENTS FOR
        UNAMBIGUOUSLY CONFERRED RIGHTS ...............................10

        STEP 2 – WHETHER §1396a(a)(8) UNAMBIGUOUSLY
        CONFERS RIGHTS ............................................................13

        STEP 3 – CONGRESSIONAL PRECLUSION ...............................17

CONCLUSION..................................................................................19

CERTIFICATE OF COMPLIANCE.......................................................20

CERTIFICATE OF SERVICE ..............................................................21

i

# <u>TABLE OF AUTHORITIES</u>

**STATUTES, REGULATIONS AND RULES:**

42 U.S.C. §1396a(a)(8) .................................................................1, 4-9, 13-14, 18
42 U.S.C. §1396a(a)(23) ............................................................................... 4-8
42 U.S.C. §1396r(c) ...................................................................................... 5-6
42 U.S.C. §1983 ...............................................................................................1

Fed. R. App. P. 27 ...........................................................................................1
10th Cir. R. 27.3 ...........................................................................................1, 4

**CASES:**

<u>Adams v. Fruit Co. v. Barrett,</u> 494 U.S. 638 (1990)................................................15
<u>Alexander v. Sandoval,</u> 532 U.S. 275 (2001) ......................................................16
<u>Ball v. Rodgers,</u> 492 F.3d 1094 (9th Cir. 2007) ..................................................18
<u>Bertrand v. Maram,</u> 495 F.3d 452 (7th Cir. 2007)............................................ 18-19
<u>Blessing v. Freestone,</u> 520 U.S. 329 (1997) ................................................. 2-3, 11
<u>Bruggeman v. Blagojevich,</u> 324 F.3d 906 (7th Cir. 2003) ......................................19
<u>Bryson v. Shumway,</u> 308 F.3d 79 (1st Cir. 2002) ................................................18
<u>Darby v. Cisneros,</u> 509 U.S. 137 (1993)............................................................15
<u>Davis v. Bridges,</u> 2024 U.S. App. LEXIS 825 (10th Cir. Jan. 12, 2024).................4
<u>Doe v. Kidd,</u> 501 F.3d 348 (4th Cir. 2007)........................................................18
<u>Golden State Transit Corp. v. Los Angeles,</u> 493 U.S. 103 (1989) ........................18
<u>Gonzaga Univ. v. Doe,</u> 536 U.S. 273 (2002)..............................................2-4, 7-18
<u>Health & Hosp. Corp. v. Talevski,</u> 599 U.S. 166 (2022)........................................5
<u>Mandy R. v. Owens,</u> 464 F.3d 1139 (10th Cir. 2006) ............................................9
<u>Medina v. Planned Parenthood S. Atl.,</u> 145 S. Ct. 2219 (2025)..................... 1-8, 12
<u>Nicholson v. Jefferson County,</u> 138 Fed. Appx. 76 (10th Cir. 2005)........................4
<u>Pennhurst Sate Sch. & Hosp. v. Halderman,</u> 451 U.S. 1 (1981) ..........................10
<u>Romano v. Greenstein,</u> 721 F.3d 373 (5th Cir. 2013) ..........................................18
<u>Sabree v. Richman,</u> 367 F.3d 180, 184 (3rd Cir. 2003)................................... 3, 9-18
<u>United States Nat'l Bank v. Independent Ins. Agents of Am.,</u>
    508 U.S. 439, 455 (1993) ........................................................................15
<u>Waskul v. Washtenaw Cty. Cmty. Mental Health,</u> 979 F.3d 426
    (6th Cir. 2020) .......................................................................................18
<u>Wilder v. Virginia Hospital Assn.,</u> 496 U.S. 498 (1990)............................... 2-3, 11
<u>Wright v. Roanoke Redevelopment & Housing Authority,</u>
    479 U.S. 418 (1986).............................................................................. 2-3, 11

## <u>STATEMENT OF PRIOR OR RELATED APPEALS</u>

Appellants' Counsel are not aware of any prior or related appeals concerning this matter.

## <u>INTRODUCTION</u>

Appellees filed A Joint Motion for Summary Disposition pursuant to Fed. R. App. P. 27 as modified by 10th Cir. R. 27.3 based upon the recent Supreme Court case of <u>Medina v. Planned Parenthood S. Atl.</u>, 145 S. Ct. 2219 (2025).  Appellees erroneously believe:

1.     The <u>Medina</u> case creates a "supervening change of law" as required by 10th Cir. R. 27.3(A)(1)(b);

2.     The statute under which Appellants sued, specifically 42 U.S.C. §1396a(a)(8), lacks rights creating language not giving Appellants a private right of action; and

3.     The <u>Medina</u> case controls and disposes of this appeal.

The <u>Medina</u> case does not create a "supervening change of law" but only serves to clarify existing law.  Under existing law as construed by <u>Medina</u>, 42 U.S.C. §1396a(a)(8) creates a private right of action enforceable under 42 U.S.C. §1983.  As such, <u>Medina</u> does not dispose of this appeal.  In support thereof, Appellants allege and state as follows:

## <u>ARGUMENTS AND AUTHORITIES</u>

### PROPOSITION 1
### NO SUPERVENING CHANGE IN LAW OR MOOTNESS

Appellees filed their Joint Motion for Summary Disposition pursuant to 10th Cir. R. 27.3(A)(1)(b) alleging a "supervening change of law" has occurred due to

1

the Supreme Court's decision in the <u>Medina</u> case. However, there has not been any "supervening change of law" and the present case continues to be a live case or controversy. <u>Medina</u> only strengthens and reinforces existing law and does not overrule or change any law. <u>Medina</u> reads more as instructions by the Supreme Court to lower courts on how to interpret and apply the cases of <u>Wright v. Roanoke Redevelopment & Housing Authority</u>, 479 U.S. 418 (1986); <u>Wilder v. Virginia Hospital Assn.</u>, 496 U.S. 498 (1990) and <u>Blessing v. Freestone</u>, 520 U.S. 329 (1997) in light of the Court's decision in <u>Gonzaga Univ. v. Doe</u>, 536 U.S. 273 (2002).

The Supreme Court clearly and unmistakably reaffirmed the <u>Gonzaga</u> decision by holding the <u>Gonzaga</u> case to be the gold standard when determining if a private right of action exists under a particular statute. The Supreme Court's decision in <u>Medina</u> is based predominantly on its decision in <u>Gonzaga</u> which the Court decided in 2002, 23 years prior to the present case. <u>Medina</u>, 145 S. Ct. at 2229-2230, 2232-2235. The Supreme Court's reinforcement of <u>Gonzaga</u>, and caution regarding the <u>Wright</u>, <u>Wilder</u> and <u>Blessing</u> decisions, is not a change of law.

According to the Library of Congress, the Supreme Court has overruled its prior precedent approximately 250 times as of 2020. Depending upon the criteria, some other authorities believe that number to be over 300. In <u>Medina</u>, the Supreme Court could have easily overturned or overruled the decisions in <u>Wright</u>, <u>Wilder</u> and <u>Blessings</u> forever removing them from our juris prudence, but it did not. The

2

decision in <u>Medina</u> is entirely void of any finding, holding or other statement striking the decisions in <u>Wright</u>, <u>Wilder</u> and <u>Blessings</u>.  In <u>Medina</u>, the Supreme Court only admonishes and cautions lower courts in their reliance on <u>Wright</u>, <u>Wilder</u> and <u>Blessings</u> when dealing with spending-power legislation, but failed or refused to overrule them.  <u>Medina</u>, 145 S. Ct. at 2233-2234.  One reason for this may be because "the Court relied on those cases in crafting <u>Gonzaga University</u>."  <u>Sabree v. Richman</u>, 367 F.3d 180, 184 (3rd Cir. 2003).

Additionally in <u>Medina</u>, the Supreme Court could have just as easily abrogated all rights of private individuals to bring suit under spending-power legislation, but it did not.  Again, pointing to <u>Gonzaga</u>, the Supreme Court held, "Spending-power legislation. . .cannot provide the basis for a §1983 enforcement suit ***<u>unless</u>*** Congress speaks with a clear voce, and manifests an unambiguous intent to confer individual rights." (Emphasis added).  <u>Medina</u>, 145 S. Ct. at 2232-2233 citing <u>Gonzaga</u>, 536 U.S. at 280.  This statement in both <u>Medina</u> and <u>Gonzaga</u> shows a private right of action may exist in spending-power legislation if the statute on which it is based satisfies the requirements of <u>Gonzaga</u>.

Before <u>Medina</u>, the law allowed private rights of action under spending-power legislation if the relevant statute satisfied the <u>Gonzaga</u> test.  The Supreme Court's decision in <u>Medina</u> does not change that law.  After <u>Medina</u>, private rights of action may still be maintained under spending-power legislation if the relevant statute

satisfies the <u>Gonzaga</u> test.  As such, <u>Medina</u> did not change the ability to bring a private action to enforce provisions in spending-power legislation.

Appellees point to <u>Medina</u> as the authority for a change of law.  However, <u>Medina</u> did not change any law but simply reinforced and clarified existing law. "Such non-jurisdictional deficiencies relating to the merits or to matters of procedure are not proper grounds for summary disposition." <u>Davis v. Bridges</u>, 2024 U.S. App. LEXIS 825, *28 (10th Cir. Jan. 12, 2024); <u>Nicholson v. Jefferson County</u>, 138 Fed. Appx. 76, 80 (10th Cir. 2005).  Since Appellees' Joint Motion for Summary Disposition is not jurisdictional and not based upon a "supervening change of law" as required by 10th Cir. R. 27.3(A)(1)(b), their Motion is without any legal basis and should be stricken, or in the alternative denied.

**PROPOSITION 2**
**STATUTE IN THE PRESENT CASE IS VERY DIFFERENT**
**FROM THE STATUTE IN MEDINA**

The present case deals with whether Appellants have a private right of action to sue under 42 U.S.C. §1396a(a)(8).  This statute requires Oklahoma to allow:

> "all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that *such assistance shall be furnished with reasonable promptness to all eligible individuals*."  (emphasis added).

In <u>Medina</u>, the Supreme Court addressed whether individuals have a private right of action to sue under 42 U.S.C. §1396a(a)(23).  The Court found this statute, "requires States to ensure that 'any individual eligible for medical assistance. . .may

4

obtain' it 'from any [provider] qualified to perform the service. . .who undertakes to provide' it." The Court further found, "The provision does not define 'qualified,' leaving that to States' traditional authority over health and safety matters." <u>Medina</u>, 145 S. Ct. at 2227. These two statutes are very different. In holding §1396a(a)(23)(A) does not create a private right of action, the Supreme Court in <u>Medina</u> focused on three attributes of the statute. Those three attributes of §1396a(a)(23)(A) are starkly different from the attributes of §1396a(a)(8) which is at issue in the present case. Those differences can be summarized as follows.

**FIRST**, when analyzing §1396a(a)(23) in <u>Medina</u> , the Supreme Court looked to its previous decision in <u>Health & Hosp. Corp. v. Talevski</u>, 599 U.S. 166 (2022) for guidance. The Court noted in <u>Talevski</u> it held the Federal Nursing Home Reform Act (**"FNHRA"**) codified at 42 U.S.C. §1396r(c) confers rights on nursing facility residents which they can enforce through private suits. The Court concluded §1396a(a)(23) does not have any corresponding provision in the FNHRA seeking to create a right to enforce the provisions of §1396a(a)(23). Therefore, §1396a(a)(23) was not intended to create a private right of action. <u>Medina</u>, 145 S. Ct. at 2234-2235.

However, in this regard §1396a(a)(8) is very different from the statute in <u>Medina</u>. FNHRA contains 42 U.S.C. §1396r(c)(2)(A)(v) which states, "A nursing facility must permit each resident to remain in the facility and must not transfer or

discharge the resident from the facility unless – *the resident* has failed, after reasonable and appropriate notice, to pay *(or to have paid under this title [42 U.S.C. §§1396 et seq.]*. . .on the resident's behalf) for a stay at the facility." (emphasis added). Unlike the statute in Medina, §1396a(a)(8) has a corresponding section in the FNHRA giving Medicaid applicants the ***right*** to have their Medicaid benefit paid. Therefore, §1396a(a)(8) was intended to create a private right of action as evidenced by §1396r(c)(2)(A)(v).

**SECOND**, in Medina, the Supreme Court found the remainder of §1396a(a)(23) "carve out various exceptions to [its general rule allowing States] to exclude from their Medicaid programs certain providers 'convicted of a felony' – and what is more, to 'determine' which felony convictions qualify for that exclusion." (Sic added). Medina 145 S. Ct. at 2235. The Court did not believe a private right of action was conferred because it "would mean Congress sought to convey a right against the States in one breath but let States control its scope in the next." Medina 145 S. Ct. at 2235.

Section 1396a(a)(8) is also very different from the statute in Medina in this regard. In the present case and unlike Medina, §1396a(a)(8) does not give States any discretion in paying Medicaid benefits to individuals who are eligible to receive them. If an individual is eligible to receive Medicaid benefits, States are required to pay them without exception. Since §1396a(a)(8) is mandatory and absolute, States

6

lack any discretion or control over its scope and consequently its enforcement thereby avoiding any conflicts in its enforcement. If an individual is eligible for Medicaid benefits, States _**shall**_ pay them.

**THIRD**, in following Gonzaga, the Medina Court considered statutory evidence pertaining to §1396a(a)(23). In holding §1396a(a)(23) does not create a private right of action, the Court looked at its placement in the statutes, provisions for its aggregate enforcement and its failure to identify any particular person being benefitted from the statute. Most importantly, the Supreme Court held, "Sometimes, we appreciate, a provision may overcome this weighty statutory evidence." Medina, 145 S. Ct. at 2236-2237. Such is the case with §1396a(a)(8) in the present case.

Section 1396a(a)(8) is placed in very close proximity to §1396a(a)(23) in the statutes. However, unlike §1396a(a)(23), §1396a(a)(8) talks in terms of benefitting a very specific individual being the person who is eligible for benefits. Additionally, §1396a(a)(8) contains mandatory language when it says Medicaid benefits "shall be furnished" to the eligible individual. This is very different from the permissive language of §1396a(a)(23) which says the individual "may obtain such assistance."

Medina recognized spending-power legislation may create a private right of action and refused to announce a blanket rule prohibiting all spending-power legislation from creating private rights of action. Medina, 145 S. Ct. at 2232-2233 citing Gonzaga, 536 U.S. at 280. Rather, Medina requires each individual statute be

analyzed under the <u>Gonzaga</u> test in order to determine if the statute creates a private right of action for enforcement. <u>Medina</u>, 145 S. Ct. at 2229-2230, 2232-2235. Therefore, the question is not whether §1396a(a)(8) is contained in spending-power legislation since under <u>Gonzaga</u> spending-power legislation does not automatically fail to create a private right of action. Rather, the question is whether §1396a(a)(8) satisfies the <u>Gonzaga</u> test thereby endowing a private right of action on individuals to enforce it.

The primary statute at issue in the present case is 42 U.S.C. §1396a(a)(8). Although <u>Medina</u> requires §1396a(a)(8) to satisfy the <u>Gonzaga</u> test, the Supreme Court in <u>Medina</u> neither considered §1396a(a)(8) nor applied the <u>Gonzaga</u> test to it. However, existing case law teaches §1396a(a)(8) satisfies the <u>Gonzaga</u> test thereby creating a private right of action for individuals to receive their Medicaid benefits.

## PROPOSITION 3
## UNDER GONZAGA 42 U.S.C. §1396a(a)(8)
## CREATES A PRIVATE RIGHT OF ACTION

Although the Supreme Court has never addressed whether 42 U.S.C. §1396a(a)(8) creates a private right of action, six Federal Appeal Courts (First, Third, Fourth Fifth, Sixth and Ninth Circuits) have applied the <u>Gonzaga</u> test to §1396a(a)(8) concluding it does create a private right of action. Two other Federal Appeal Courts (Seventh and Tenth Circuits) have recognized a private right of action although they have not directly decided the issue.

In <u>Mandy R. v. Owens</u>, 464 F.3d 1139 (10th Cir. 2006), the Tenth Circuit considered whether §1396a(a)(8) and §1396a(a)(10) create a private right of action when applying <u>Gonzaga</u>. The Court assumed, without deciding, a private right of action exists under both statutes. <u>Mandy</u>, 464 F.3d at 1142-1143. The Court said, "Since the Supreme Court clarified when a statute creates an enforceable private right in <u>Gonzaga University v. Doe</u>, 536 U.S. 273, 122 S. Ct. 2268, 153 L. Ed. 2d 309 (2002), several circuit courts have considered whether [42 U.S.C. §1396a(a)(8) or (10)] creates an enforceable private right. Each has concluded that the provision in question does." (Sic added). <u>Mandy</u>, 464 F.3d at 1142-1143 citing <u>Sabree v. Richman</u>, 367 F.3d 180 (3rd. Cir. 2004).

In the <u>Sabree</u> case, the Third Circuit performed the most extensive analysis of all Circuits in applying the <u>Gonzaga</u> test to §1396a(a)(8) by citing, analyzing and applying <u>Gonzaga</u> throughout its opinion. <u>Sabree</u>, 367 F.3d at 183-193. The Third Circuit held §1396a(a)(8) provides a private right of action. <u>Sabree</u>, 367 F.3d at 183. The Court began by saying:

> "<u>Gonzaga University</u> provides the dispassionate lens through which [private rights under §1396a(a)(8)] must be viewed. A three-step analysis is required. First, we must examine <u>Gonzaga University</u> to determine the essential characteristics of an 'unambiguously conferred right.' Second, we must assess whether the statutory language of Title XIX imparts an 'unambiguously conferred right.' Third, we must determine-if an individual right has been unambiguously conferred-whether Congress has precluded individual enforcement of that right." (Sic added). <u>Sabree</u>, 367 F.3d at 183.

## <u>Step 1 – Gonzaga Requirements for Unambiguously Conferred Rights</u>

Citing <u>Pennhurst Sate Sch. & Hosp. v. Halderman</u>, 451 U.S. 1, 18 (1981), the Third Circuit noted, "in legislation enacted pursuant to the spending power, the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State.  Nonetheless, as the Court observed in <u>Gonzaga University</u>, in some instances Congress has unambiguously conferred rights that may be vindicated by individual suits brought under §1983." <u>Sabree</u>, 367 F.3d at 183.

The Third Circuit noted in <u>Gonzaga</u>, the plaintiff sought to enforce conditions imposed on States under the Family Educational Rights and Privacy Act of 1974 (**"FERPA"**).  The Third Circuit recognized the <u>Gonzaga</u> court rejected plaintiff's claims because the <u>Gonzaga</u> court "concluded that in FERPA Congress had not '*intended to create a federal right*.'  The ultimate question, in respect to whether private individuals may bring a lawsuit to enforce a federal statute, through 42 U.S.C. §1983 or otherwise, is a *question of congressional intent*." <u>Sabre</u>, 367 F.3d at 183 citing <u>Gonzaga</u>, 536 U.S. at 283, 291.

The Third Circuit understood its first task was to determine "whether Congress intended to confer the rights claimed by plaintiffs.  <u>Gonzaga University</u> instructs that congressional intent is manifest only when statutory language

unambiguously confers such rights." Sabre, 367 F.3d. at 183-184 citing Gonzaga, 536 U.S. at 287. The Third Circuit recognized the decisions in Wright, Wilder and Blessings and the Supreme Court had "relied on those cases in crafting Gonzaga University." However, the Third Circuit limited the application of those cases as allowed by Gonzaga. Sabree, 367 F.3d at 184. The fact the Supreme Court's gold standard in Gonzaga is based upon Wright, Wilder and Blessing may be the reason the Supreme Court did not overrule those cases in Medina.

The Third Circuit continued, "To confer rights, Congress must use 'rights-creating language.' Such language must clearly impart an 'individual entitlement,' and have an 'unmistakable focus on the benefitted class'" Sabree, 367 F.3d at 187 citing Gonzaga 536 U.S. at 287. "As with implied private rights of action, statutory claims under §1983 must be premised on an unambiguous articulation and conferral of rights by Congress. Where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under §1983 or under an implied right of action." Sabree, 367 F.3d at 188 citing Gonzaga, 536 U.S. at 286. "Rights are enforceable under §1983; laws are not." Sabree, 367 F.3d at 188 citing Gonzaga, 536 U.S. at 283.

The Third Circuit found the Gonzaga court evaluated FERPA under these standards. In so doing, the Gonzaga court compared Title VI of the Civil Rights Act of 1964 (**"Title VI"**) and Title IX of the Education Amendments of 1972 (**"Title**

IX") to FERPA.  The <u>Gonzaga</u> court "contrasted the 'individually focused' 'rights-creating' language of Title VI and Title IX ('no person shall be subjected to discrimination') with FERPA's general provisions addressing the Secretary of Education ('no funds shall be made available' to any 'educational agency or institution' which has a prohibited 'policy or practice.')."  <u>Sabree</u>, 367 F.3d at 188 citing <u>Gonzaga</u>, 536 U.S. at 287-288.  The <u>Gonzaga</u> court noted the "FERPA nondisclosure provisions. . .speak only in terms of institutional policy and practice, not individual instances of disclosure."  <u>Sabree</u>, 367 F.3d at 188 citing <u>Gonzaga</u>, 536 U.S. at 287-288.

The Third Circuit held, "The contrast between the language of Titles VI and IX and that of FERPA is stark.  The specific, mandatory, individually focused language of Titles VI and IX confers individual rights, while the aggregate, programmatic focus of FERPA's language merely creates law applicable to the states."  <u>Sabree</u>, 367 F.3d at 188.

The Third Circuit also found the <u>Gonzaga</u> court "consider[ed] the structural elements of FERPA, which emphasize the programmatic and aggregate focus of the statute.  Although references to the individual appear throughout the text of FERPA, 'in each provision the reference . . . is in the context of describing the type of policy or practice that triggers a funding prohibition.'  Indeed, the fact that Congress 'expressly authorized the Secretary of Education to deal with violations . . . and to

establish or designate a review board' buttressed the Court's assessment that FERPA did not confer enforceable rights." <u>Sabree</u>, 367 F.3d at 188 citing <u>Gonzaga</u>, 536 U.S. at 283, 289.

Finally, the Third Circuit noted the <u>Gonzaga</u> court "highlighted statutory language reminiscent of that in <u>Blessing</u> that counseled against a finding of individual rights. ('Recipient institutions can further avoid termination of funding so long as they comply substantially. . . This, too, is not unlike <u>Blessing</u>, which found that Title IV-D failed to support a §1983 suit in part because it only required substantial compliance with federal regulations.')" <u>Sabree</u>, 367 F.3d at 188-189 citing <u>Gonzaga</u>, 536 U.S. at 289.

### <u>Step 2 – Whether §1396a(a)(8) Unambiguously Confers Rights</u>

In finding §1396a(a)(8) unambiguously confers a private right of action, the Third Circuit held:

> "[T]he statutory language [of §1396a(a)(8)] is clear and unambiguous. We can hardly imagine anyone disputing that a state must provide the assistance necessary to obtain [Medicaid] services, and that it must do so with 'reasonable promptness'. . .Our inquiry, however, does not end there. Indisputably, these provisions create law, binding on those states choosing to accept Medicaid funding. Whether the same provisions confer rights, enforceable by individuals, is another question, and is the question we are called upon to answer." (Sic added) <u>Sabree</u>, 367 F.3d at 189.

The Third Circuit continued:

> "To determine whether [§1396a(a)(8)] provide[s] plaintiffs with unambiguously conferred rights, we begin with what has come to be

called the 'Blessing Test'. . .The plain language of [§1396a(a)(8)] clearly conveys that a state 'must provide' plaintiffs with 'medical assistance, including ICF/MR services, with 'reasonable promptness.' Without difficulty, we conclude that these provisions satisfy the Blessing Test because: (1) plaintiffs were the intended beneficiaries of. . .§1396a(a)(8); (2) the rights sought to be enforced by them are specific and enumerated, not 'vague and amorphous'; and (3) the obligation imposed on the states is unambiguous and binding."   (Sic added). Sabree, 367 F.3d at 189.

However, the Third Circuit cautioned:

"But, again, our inquiry does not end there because, as is explained in Gonzaga University, the Blessing Test may only indicate that plaintiffs 'fall within the general zone of interest that the statute is intended to protect; something less than what is required for a statute to create rights enforceable directly from the statute itself.'   To ensure that Congress unambiguously conferred the rights asserted, we must determine whether Congress used 'rights-creating terms.'" Sabree, 367 F.3d at 189-190 citing Gonzaga, 536 U.S. at 283-284.

In making this determination, the Third Circuit recognized the Gonzaga court had:

 "[I]dentified the text of Titles VI and IX as exemplars of rights-creating language. Viewing Titles VI and IX, we find it difficult, if not impossible, as a linguistic matter, to distinguish the import of the relevant [§1396a(a)(8)] language-'A State plan must provide'-from the 'No person shall' language of Titles VI and IX. Just as in Titles VI and IX, the relevant terms used in [§1396a(s)(8)] are 'mandatory rather than precatory.'   Further, the 'individual focus' of. . .§1396a(a)(8) is unmistakable." (Sic added). Sabree, 367 F.3d at 190 citing Gonzaga, 536 U.S. at 287.

Finally, the Third Circuit held "[§1396a(a)(8)] enumerate[s] the entitlements

available to 'all eligible individuals.'  [§1396a(s)(8)] do[es] not focus on 'the entity.

. .regulated rather than the individuals protected.'  Neither do the statutory references

14

to the individual appear 'in the context of describing the type of policy or practice that triggers a funding prohibition.'" (Sic added). <u>Sabree</u>, 367 F.3d at 190 citing <u>Gonzaga</u>, 536 U.S. at 288. "In requiring states which accept Medicaid funding to provide [Medicaid] services with reasonable promptness, Congress conferred specific entitlements on individuals 'in terms that could not be clearer.'" (Sic added). <u>Sabree</u>, 367 F.3d at 190 citing <u>Gonzaga</u>, 536 U.S. at 280. "There is no ambiguity. Where, as here, the plain meaning of the text is evident, we need not look further to determine congressional intent." <u>Sabree</u>, 367 F.3d at 190 citing <u>Darby v. Cisneros</u>, 509 U.S. 137, 147 (1993). However, the Third Circuit's analysis of §1396a(a)(8) did not end there.

The Third Circuit continued by saying, "As a general rule of statutory construction, where the terms of a statute are unambiguous, judicial inquiry is complete." <u>Sabree</u>, 367 F.3d at 190 citing <u>Adams v. Fruit Co. v. Barrett,</u> 494 U.S. 638, 642 (1990). "General rules, however, are susceptible to exceptions, and we have before us one of those instances in which our inquiry does not end with the plain language of the statute. We recognize, of course, that 'statutory construction' is a holistic endeavor, and, at a minimum, must account for a statute's full text, language as well as punctuation, structure, and subject matter." <u>Sabree</u>, 367 F.3d at 190 citing <u>United States Nat'l Bank v. Independent Ins. Agents of Am.</u>, 508 U.S. 439, 455 (1993).

The Third Circuit continued, "In <u>Gonzaga University</u>, the Court instructs that not only should the text of the statute be examined, but also its structure."  <u>Sabree</u>, 367 F.3d at 190-191 citing <u>Gonzaga</u>, 536 U.S. at 286.  "This instruction makes good sense: we cannot presume to confer individual rights-that is a task for Congress.  As the Court aptly put it, we 'may play the sorcerer's apprentice but not the sorcerer himself.'"  <u>Sabree</u>, 367 F.3d at 191 citing <u>Alexander v. Sandoval</u>, 532 U.S. 275, 291 (2001).  "Our judicial function is limited to recognizing those rights which Congress 'unambiguously confers,' and in doing so we would be remiss if we did not consider the whole of Congress's voice on the matter-the statute in its entirety."  <u>Sabree</u>, 367 F.3d at 191.

In conclusion, the Third Circuit held:

"The opening section of Title XIX-Section 1396-is the appropriations and general introductory statement of the Medicaid Act.  As that Section explains, Title XIX was enacted 'for the purpose of enabling each State . . . to furnish . . . medical assistance.'  This language says nothing of individual entitlements or rights, but reminds us that we are dealing with an agreement between Congress and a particular state, and recalls the axiom of <u>Pennhurst</u>."  <u>Sabree</u>, 367 F.3d at 191.

"The language used by Congress in. . .1396a(a)(8), however, explicitly creates rights. Admittedly, plumbing for congressional intent by balancing the specific language of a few discrete provisions of Title XIX against the larger structural elements of the statute is a difficult task.  Nonetheless, it is evident, at least to us, that the statutory language, despite countervailing structural elements of the statute, unambiguously confers rights which plaintiffs can enforce."  <u>Sabree</u>, 367 F.3d at 192.

"We conclude that Section 1396, the appropriations and general introductory statement, cannot neutralize the rights-creating language of. . .§1396a(a)(8). Our confidence in this conclusion rests securely on the fact that the Court has refrained from overruling <u>Wright</u> and <u>Wilder</u>, which upheld the exercise of individual rights under statutes that contain similar (or, in the case of <u>Wilder</u>, identical) provisions to 42 U.S.C. § 1396."  <u>Sabree</u>, 367 F.3d at 192.

"Section 1396 was in effect at the time of <u>Wilder</u>, in which the Court allowed claims to proceed under Title XIX, and a similar provision was in effect when the Court allowed claims to proceed in <u>Wright</u>.  But <u>Gonzaga University</u> did not overrule <u>Wilder</u>; rather, it explained that 'Congress left no doubt of its intent for private enforcement.'  Neither did the Court overrule <u>Wright</u>; rather, it identified it as an instance in which Congress 'unambiguously conferred a mandatory [benefit] focusing on the individual family and its income.'"  <u>Sabree</u>, 367 F.3d at 192 citing <u>Gonzaga</u>, 536 U.S. at 280-281.

"We do not diminish the significance of the 'comply substantially' language in Section 1396c.  Rather, we recognize that the plaintiffs in <u>Blessing</u> sued under a provision requiring 'substantial compliance' by a state.  The Court held that the plaintiffs had no such right in the aggregate, *but specifically reserved decision on whether they might have individual rights under other provisions of the statute*, and remanded for a determination of that issue.  This distinction makes good sense: that Congress provides a remedy for itself for non-compliance does not necessarily preclude a coherent and coexisting intent to create an enforceable right in individual beneficiaries."  <u>Sabree</u>, 367 F.3d at 192.

### <u>Step 3 – Congressional Preclusion</u>

In addressing the question of Congressional preclusion, the Third Circuit held:

"Even where a right has been unambiguously conferred, a state may rebut the presumption of the availability of §1983 by demonstrating that Congress, either expressly or by providing a comprehensive remedial scheme, intended to preclude individual suits. . .We note, however, that 'the burden to demonstrate that Congress has expressly withdrawn the remedy is on the defendant,' and that a court should 'not lightly

17

conclude that Congress intended to preclude reliance on §1983 as a remedy' for deprivation of an unambiguously conferred right." <u>Sabree</u>, 367 F.3d at 193 citing <u>Golden State Transit Corp. v. Los Angeles</u>, 493 U.S. 103, 107 (1989).

 "Indeed, only twice has the Court found a remedial scheme sufficiently comprehensive to supplant §1983.  Title XIX contains no provision explicitly precluding individual actions.  As a result, there is a substantial burden on a state seeking to establish that Congress has provided a comprehensive remedial scheme with which individual actions cannot be reconciled. Title XIX does allow for a state administrative hearing.  This is, however, the only remedial component of Title XIX, and clearly falls short of the comprehensive enforcement schemes seen in [prior cases]." (Sic added).  <u>Sabree</u>, 367 F.3d at 193.

The Third Circuit concluded a private right of actions exists under §1396a(a)(8).

## Other Federal Appeal Courts

The Third Circuit is not alone in finding a private right of action exists under 42 U.S.C. §1396a(a)(8).  The First, Fourth, Fifth, Sixth and Ninth Circuits have all applied the <u>Gonzaga</u> test to §1396a(a)(8); and after doing so, concluded §1396a(a)(8) creates a private right of action for individuals to enforce.  See <u>Bryson v. Shumway</u>, 308 F.3d 79, 88-89 (1st Cir. 2002); <u>Doe v. Kidd</u>, 501 F.3d 348, 355-357 (4th Cir. 2007); <u>Romano v. Greenstein</u>, 721 F.3d 373, 377-379 (5th Cir. 2013); <u>Waskul v. Washtenaw Cty. Cmty. Mental Health</u>, 979 F.3d 426, 446-448 (6th Cir. 2020); <u>Ball v. Rodgers</u>, 492 F.3d 1094, 1109 (9th Cir. 2007).  Based upon this authority, the Seventh Circuit has assumed a private right of action exists under §1396a(a)(8) without analyzing the issue.  <u>Bertrand v. Maram</u>, 495 F.3d 452, 457-

458 (7th Cir. 2007); <u>Bruggeman v. Blagojevich</u>, 324 F.3d 906, 910-911 (7th Cir. 2003).

**<u>CONCLUSION</u>**

For the reasons set forth above, Appellants respectfully request this Court find, hold and order:

(a)    No "supervening change of law" has occurred in this case as required by 10th Cir. R. 27.3(A)(1)(b);

(b)    42 U.S.C. §1396a(a)(8) satisfies the test in <u>Gonzaga</u> thereby creating a private right of action for individuals to enforce and require States, through 42 U.S.C. §1983, to accept their Medicaid applications and pay benefits to all eligible individuals with reasonable promptness;

(c)    The <u>Medina</u> case does not control or dispose of this appeal;

(d)    Appellees' Joint Motion For Summary Disposition be stricken or denied;

(e)    Appellees pay all Appellants' attorneys' fees and costs incurred in this matter; and

(f)    Such further and additional relief as this Court deems necessary and appropriate.

Respectfully submitted,

/s/ Michael Craig Riffel
Michael Craig Riffel, OBA #16373

19

Katresa J. Riffel, OBA #14645
Matthew C. Russell, OBA #30239
Riffel, Riffel & Benham, P.L.L.C.
3517 W. Owen K. Garriott, Suite One
Enid, Oklahoma 73703
Telephone: (580) 234-8447
Facsimile: (580) 234-5547
Email: criffel@westoklaw.com
Email: kriffel@westoklaw.com
Email: mrussell@westoklaw.com
Attorneys for Appellants

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with Fed. R. App. P. 25(a)(5) and 10th Cir. R. 25, and all privacy redactions have been made.

2.      All hard copies to be filed with the Court Clerk's Office, if any, are exact copies of the ECF filing.

3.      The ECF filing was scanned for viruses with Trend Security Agent (client version 19.581.00) last updated on September 25, 2025, and according to the program is free of viruses.

4.      This brief complies with the type-volume limit of Fed. R. App. P. 27(d)(2) and 10th Cir. R. 27.3(B)(3) because excluding the parts of the document exempted by Fed. R. App. P. 32(f), this response does not contain more than 5,200 words and does not exceed 20 pages in length.

5.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft 365 Applications for business version 16.0.13001.20266 (including Microsoft Word) in 14 point font size and Times New Roman type style.

/s/ Michael Craig Riffel

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 25th day of September 2025, I electronically transmitted the attached document and the accompanying Appendix to the Clerk of the Court using the ECF System for filing. Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the following ECF registrants:

> Susan L. Eads
> Josh Hollway
> Oklahoma Department of Human Services
> P.O. Box 25352
> Oklahoma City, Oklahoma 73125
> Email: susan.eads@okdhs.org
> Email: joshuaj.holloway@okdhs.org
> Attorneys for Appellee, Jeffrey Cartmell

> Michael Williams
> Ryan Gillett
> Oklahoma Health Care Authority
> P.O. Drawer 18497
> Oklahoma City, Oklahoma 73154
> Email: michael.williams@okhca.org
> Email: ryan.gillett@okhca.org
> Attorneys for Appellee, Ellen Buettner

/s/ Michael Craig Riffel

21